## PILLSBURY & a. v. LOCKE.

Where the defendant contracted to take all the white oak upon the plaintiffs' lot that was suitable for " ship timber" — *held*, that the declarations of the defendant, made at the time the contract was entered into, that the vessel for which he designed the timber was a small sized one, and that he wanted the small timber upon the lot to put into the top of the vessel, as evidence tending to show what sized timber will answer the description of " ship timber," was inadmissible.

The quantity of timber taken from a lot was in dispute. A witness who drew it testified that he took down upon a slate the quantity in each stick which had been measured, and added up the several quantities and gave their sum to his wife or daughter, who entered it in his presence upon a memorandum book, and he then examined the entries, and saw that they were correct. *Held*, that the book might be submitted to the jury, in connection with the testimony of the witness, as competent to show the quantity drawn by him.

ASSUMPSIT. It appeared that the defendant agreed to take all the white oak ·upon the plaintiff's lot that was suitable for

" ship timber," upon conditions which need not be stated in this case.

The court ruled that the plaintiffs might show the defendant's declarations to them, at the time the contract was entered into, that the vessel for which he designed the timber was a small sized one, and that he wanted the small timber upon the lot to put into the top of the vessel, as evidence tending to show what sized timber will answer the description of " ship timber." The defendant's counsel, in explanation of this testimony, offered to prove that at the time the declarations were said to have been made, he had contracted with Fernald & Pettigrew, ship build-ers, to furnish timber for a certain vessel, and the size of that vessel, and that the timber in question actually went into it ; but the court ruled that the proposed evidence was inadmissible. There was no proof that the plaintiffs had any knowledge of the contract with Fernald & Pettigrew.

The quantity of timber which one Ellison drew was in dispute. It was proved that said timber had been got out and moulded by a gang of hands under one Raitte, and then surveyed by him, and the contents of each stick marked upon the end with red chalk. Ellison testified that in drawing he passed by his own house, and as he drew each load he took down upon a slate the quantity in each stick, and added up the several quantities and gave their sum to his wife, or daughter, who entered it in his presence upon a memorandum book, and he then looked at the entry upon the book, and saw that it was correct. Eight loads were thus en-tered upon the book under his direction and inspection, three by his daughter and five by his wife. He could not recollect the amount in either load. The court ruled that the entries in the book were competent, and they were read to the jury. The wife and daughter were afterwards introduced, and they confirmed the testimony of Ellison, and testified that they put down the sums as he gave them, and after each entry compared it with the slate, and found it to agree with the slate.

It appeared that the figures upon the slate were not preserved, but were rubbed out after their sum had been carried to the

book. The defendant afterwards introduced Raitte as a witness, who testified that they went to the plaintiffs' lot the 19th of January, and left it the 8th of February, 1853, and he produced a memorandum of all the timber which he said was moulded upon that and the adjoining lot within those dates, which would make the Ellison timber considerably less than what Ellison had stated it. Upon cross-examination he said that he knew the time they commenced, for it was the first work he did for the defendant, and he came into town the 18th, and that from this lot they went to lots owned by J. Pillsbury and J. C. Waldron, and moulded timber. He could not tell how long they were thus engaged, but " hard on upon a fortnight — over a week, as many as eight days" — and there might have been one man more with them than at the plaintiff's lot ; but he could not tell how much timber they moulded at J. Pillsbury's and Waldron's — should not think it was twenty tons — it was as much as ten — could not say whether it was fifteen tons, or seventeen tons, or not. He said when they went on to the plaintiffs' lot there were five men under him, but they were green hands. Two others came the first part of the second week, and two the latter part of that week, but those last remained but a few days. Perhaps the five men he commenced with could hew half a ton a day ; should suppose four good, experienced men would get out two tons a day, if the timber " run large," but if small, not so much. Bills of the J. Pillsbury timber and of the Waldron timber were shown him, which he said were made out by him, and were correct. The defendant's counsel objected to these bills, but the court ruled that they might be read as a part of the testimony of the witness upon cross-examination.

There was conflicting evidence as to the quantity of timber that was hauled by one Batchelder. The court permitted him to state the size of his team, and the condition of the road at the time he drew.

The court permitted a witness who was acquainted with the plaintiffs' lot, and had been over it, and in 1851 had looked at the oak trees with a view to buying them, to describe them and

state their height and diameter, as near as he could remember. This evidence was material.

A verdict having been returned for the plaintiffs, the defendant moved that it might be set aside because of said rulings.

*Wheeler*, for the defendant.

In this case it appears that the defendant agreed to take all the white oak timber upon the plaintiffs' lot that was suitable for " ship timber."

I. The term " ship timber" has a distinct, definite, and well understood meaning, both among buyers and sellers of timber for ships, as well as among builders of ships, and the court was wrong in admitting the declarations of the defendant as to the purpose for which he designed the whole or any part of the plaintiffs' timber, to show what sized timber would answer the description of ship-timber.

Because, they were obviously extraneous to the contract. They were repugnant to the natural and well understood import of the term " ship-timber," as well as to the contract which was set up.

It is too obvious to need argument, that a contract to take certain timber, which was suitable for " ship-timber," and a contract to take such timber as was.designed for a small sized vessel, are essentially different. If these contemporaneous declarations were intended and understood by the parties to decide the timber which the defendant bought, then there was no such contract as was declared upon, and the evidence allowed should have been rejected.

The declarations were not admissible as evidence tending to show what sized timber would answer the description of " ship-timber." They were merely voluntary statements of the defendant, unconnected with the contract, as to the purpose for which he designed the timber *which he had bought.*

II. If the court should hold this evidence admissible, then we contend, being admitted, it was the right of the defendant to show the actual size of the vessel which he termed small sized,

for which he designed the timber, and into which it actually went.

If the testimony was material to show what description of timber answers for ship-timber, it would seem that the explanation ought to be allowed, to show what he meant by a small sized vessel.

III. There are several objections to the testimony and memorandum of Ellison, which distinguish it from the decisions made in this State involving a similar principle. In the case of *Haven* v. *Wendell*, 11 N. H. 112, the memorandum was made by the witness *himself*, immediately after the conversation took place, and was an *original* memorandum. In the case at bar the *original* memorandum was destroyed, and the one produced was a copy, made by some one else. See, also, *Watson* v. *Walker*, 3 Foster 495.

IV. The cross-examination in relation to the timber got out upon Pillsbury and Waldron's lots was a matter entirely collateral to the question at issue between the parties, and depending upon such a variety of circumstances as to be much more likely to mislead the jury than to afford them any reliable aid in coming to a correct and just conclusion.

Upon so uncertain a foundation, the survey bills should not have been received, as they would be more likely than otherwise to mislead the jury, and work injustice between the parties. Substantially the same objections apply to the testimony of Batchelder.

The evidence of the witness who looked at the plaintiffs' oak trees, and was permitted to state their height and diameter, *as near as he could remember*, was inadmissible, because at the best it was merely his recollection of an opinion which he had formed. In any view, it was not the best evidence which it was in the power of the plaintiffs to produce, and in every respect was too loose and uncertain to receive the sanction of the law.

*Peavey* and *Christie*, for the plaintiffs. The jury would not understand what the term " ship-timber" meant, and the evi-

Pillsbury v. Locke.

dence was admissible to show it. It was Locke's declarations as to what "ship-timber" meant.

It is of no consequence, as bearing upon this case, what contract the defendant made, unknown to the plaintiffs, with Fernald & Pettigrew, or what kind of a vessel the timber actually went into. When the defendant was making the contract with the plaintiffs for the timber, he might, in order to get a better bargain, and probably did, hold out the false inducements to them that he would work up the small timber upon the lot, when he really did not intend to work it up.

The entries in Ellison's memorandum book may very properly be called original entries, and were properly admitted, in connection with his testimony and that of his wife and daughter, and as a part of it. This doctrine is fully discussed in *Haven v. Wendell*, 11 N. H. 112, and the case at bar comes within that decision.

The bills of the timber moulded upon the lots of J. Pillsbury and J. C. Waldron were properly admitted as part of Raitte's testimony upon cross-examination. These bills fix the quantity of timber moulded in a certain time by a crew of hands. Substantially the same crew worked a certain other time upon the plaintiffs' lot and the adjoining lot. The quantity moulded upon the adjoining lot was known. This evidence would tend to contradict the testimony of Raitte upon his direct examination, and to show that his memorandum was not correct.

The size of the team and the state of the roads would enable the jury to judge what was the probable quantity that Batchelder drew, or whether it was more probable that he drew one quantity testified to and not the other.

A witness, acquainted with plaintiffs' lot, and who had been over it and looked at the oak trees with a view of buying them, must have had an intimate knowledge of them, and was the proper person to state the height and diameter, in order that the jury might judge of the contents. This kind of evidence would tend to show the quantity of timber that ought to have been got out of them.

EASTMAN, J. Several rulings were made by the court in the progress of the trial of this cause, and we think they may all be sustained except the first.

The parties had entered into a contract, by which the defendant was to take all the white oak upon the plaintiffs' lot that was suitable for "ship timber." As tending to show the meaning of the term "ship timber," a witness was permitted to testify that at the time the contract was entered into, the defendant said that the vessel for which he designed the timber was a small-sized one, and that he wanted the small timber upon the lot to put into the top of the vessel.

It is a principle too well settled to require discussion, that when a contract is reduced to writing, any parol agreement made at the time, varying the terms of the contract, cannot be shown by the parties thereto to change it; and evidence tending to show any such change or variation is inadmissible.

Among those who deal in the article, the phrase, "ship timber," has undoubtedly a somewhat definite meaning, as much so as "merchantable boards," or "cord wood," or the like ; and the declarations of the purchaser at the time of discussing the bargain, as to the uses to which he intends to put the articles, cannot be competent to change or vary the signification of the terms finally used in the contract. The meaning of words and terms used in making a contract or agreement must, in the absence of fraud, be determined by their known or proved signification, and not by the statements of the parties, or the conversations that they may have at the time the contract is made. If one phrase in a contract may be controlled or explained by the declarations of a party at the time it is entered into, then may others ; and the real contract made may be thus materially changed.

Suppose a person, in contracting for the ship timber on a lot, should say that he wished to use some small sticks for the making of a skiff or a row boat ; or an individual purchasing cord wood should remark that he desired the limbs and brush for summer use, — would such evidence be competent as tending

to show what the terms " ship timber" and "cord wood" mean ? Evidently not.  If one purchasing the ship timber on a lot should take therefrom other timber, not answering the description of that purchased, he would be liable therefor, but not on the contract.  And so with this defendant ; if he has converted to his use what he did not buy, he is answerable for the same, but not by virtue of the agreement made.  This ruling of the court was wrong.

As to the next point : For the same reasons, the defendant's proposition to show his contract with Fernald & Pettigrew, and the size of a certain vessel, could have no legitimate tendency to show the meaning of the terms he used.  The plaintiffs were to judge from his language, and not from what he had done, or from what was passing in his mind.

The memorandum book was admissible.  It was so far an original entry as not to be objectionable on that account.  *Haven* v. *Wendell,* 11 N. H. 112 ; *Watson* v. *Walker,* 3 *Foster* 471 ; *Webster & al.* v. *Clarke,* 10 Foster 245.  And the objection to the bills used upon the trial comes within the same principle.

Batchelder's testimony was rightly admitted.  The size of the team and the condition of the roads had a tendency to show the quantity that he drew.

The testimony of the witness, who had been over the lot, and who described the size of the trees, was also competent.  Though slight, it had some tendency to show what amount was on the lot.

There is no new principle involved in any of these rulings, and it is unnecessary to go further than to say, that they appear to the court to be correct.  For error in the first ruling, however,

*The verdict must be set aside.*